CV 13-5709

GERSHON, J.

ORENSTEIN,

Dana C. Lumsden
BRADLEY ARANT BOULT CUMMINGS LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2690
Charlotte, North Carolina 28202
Telephone: (704) 338-6034
Facsimile: (704) 332-8858

ATTORNEYS for PLAINTIFF
NATIONSTAR MORTGAGE, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X

NATIONSTAR MORTGAGE, LLC,

          Plaintiff,

    v.

YOSSEF BONIEL and SHELLY BONIEL,

          Defendants.
-----------------------------------------------------X

Case No.

**COMPLAINT**

Plaintiff Nationstar Mortgage, LLC ("**Nationstar**"), by its attorneys, Bradley Arant Boult

Cummings LLP, for its Complaint against the defendants Yossef Boniel and Shelly Boniel (the

"**Boniels**" or "**Defendants**") herein alleges as follows:

## NATURE OF THE ACTION

    1.    This is an action brought against the Defendants for breach of a mortgage

contract.

## PARTIES

    2.    Plaintiff, Nationstar Mortgage, LLC, is a limited liability company organized

under the laws of the State of Delaware with its principal place of business at 350 Highland

Drive, Lewisville, Texas 75067.

1

3.      Defendant, Yossef Boniel, is a citizen of the State of New York who resides at 72 Tennis Place, Forest Hills, New York 11375.

4.      Defendant, Shelly Boniel, is a citizen of the State of New York who resides at 72 Tennis Place, Forest Hills, New York 11375.

5.      This action is brought against the Defendants for breach of their mortgage contract.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

7.      This Court has personal jurisdiction over the Defendants pursuant to N.Y. CPLR § 301 and the Defendants own, use and possess real property in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, the Defendants are subject to personal jurisdiction and they may be found in this District.

## FACTS

9.      On September 29, 2006, the Defendants entered into the Consolidation, Extension And Modification Agreement with Lehman Brothers Bank, FSB, which included the mortgage that is the subject matter of this litigation (the "Mortgage"). A true and correct copy of the Consolidation, Extension And Modification Agreement is attached as Exhibit "A" hereto.

10.     A true and correct copy of the Mortgage is attached as Exhibit "**B**" hereto.

11.     The Mortgage secures a loan that the Defendants obtained (the "Loan") in connection with the property located at 72 Tennis Place, Forest Hills, New York 11375 (the "Property").

12.     Nationstar is the servicer of the Loan pursuant to a March 6, 2012 asset purchase agreement between Nationstar and Aurora Loan Services, LLC.

13.     The Loan has been contractually due for an installment payment since October 1, 2012 and the unpaid principal amount that is due on the Loan is no less than $2,397,178.13.

*The Defendants' Breach of the "Due On Sale" Clause of the Mortgage*

14.     Paragraph 18 of the Mortgage provides in relevant part:

**Agreements about Lender's Rights If the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be executed by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

15.     The Defendants have entered into a purchase and sale contract with an unidentified purchaser to sell the Property on or about October 17, 2013.

16.     Defendants do not intend to pay the Lender the amounts due and owing under the Loan immediately or within 30 days after receiving notice of Lender's demand for immediate payment. Instead, Defendants intend to either retain the proceeds of the sale for their own

purposes or deposit them into an unspecified escrow account maintained by an unidentified title company.

17.    Nationstar has not authorized Defendants' sale of the Property.

18.    The Defendants, through their authorized representatives, have unequivocally repudiated their contractual obligation under Paragraph 18 of the Mortgage to make an immediate payment in full of all sums secured by the Mortgage to the Lender.

19.    Defendants' unauthorized contract to sell the Property to an unidentified purchaser and their repudiation of their obligation to pay to the Lender the amounts due under the Loan immediately is in breach of Paragraph 18 of the Mortgage.

20.    Defendants have appealed the Court's decision granting Nationstar's motion for summary judgment and denying Defendant's motion for summary judgment in the lawsuit captioned *Boniel v. U.S. Bank, N.A.*, 1:12-cv-3809 (the "Appeal").

21.    Upon information and belief, the Property is the only asset that the Defendants own that they could sell to satisfy a judgment entered as a result of their default under their obligations related to the Loan.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

22.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23.    The Lender has performed its obligations under the Mortgage.

24.    Paragraph 18 of the Mortgage is a binding and enforceable obligation of the Defendants.

25.    The Defendants have repudiated their contractual obligations under Paragraph 18 of the Mortgage.

26.     By reason of the Defendants' breach of Paragraph 18 of the Mortgage, Defendants have sustained and will continue to sustain substantial damages in an amount presently unknown but to be determined at trial.

27.     Further, as a result of Defendants' misconduct, Nationstar has sustained and, if the Defendants are not directed to deposit the proceeds from the sale of the Property into an escrow account maintained by the Clerk's Office for the United States District Court for the Eastern District of New York, Nationstar will continue to sustain irreparable harm for which no adequate remedy at law exists.

**WHEREFORE,** Plaintiff, Nationstar Mortgage, LLC, respectfully prays that this Court grant judgment to Plaintiff in the above cause of action, as follows:

1.     Immediately and preliminarily mandating that Defendants deposit the proceeds of any unauthorized sale into an escrow account maintained by the Clerk of Court for the United States District Court for the Eastern District of New York pending resolution of Defendants' Appeal and that the Defendants be required to pay Plaintiff the interest due upon resolution of the Appeal; and

2.      Granting Plaintiff any such other and further relief as this Court deems just and appropriate, including the recovery of Plaintiff's attorneys' fees and costs.

This 16th day of October, 2013.

BRADLEY ARANT BOULT CUMMINGS LLP

_____

Dana C. Lumsden, Esq.
Bank of America Corporate Center
100 North Tryon Street, Suite 2690
Charlotte, NC 28202
(704) 338-6000
(704) 332-8858 ~ Fax

COUNSEL for PLAINTIFF
NATIONSTAR MORTGAGE, LLC



# EXHIBIT A

INDEX NO. 701181/2012

RECEIVED NYSCEF: 06/27/2012

FILED: QUEENS COUNTY CLERK 06/27/2012
NYSCEF DOC. NO. 8,

Loan # 0038457768·
MIN#100018440003389217

Record and return to
AURORA LOAN SERVICES, LLC
601 5th Avenue, PO Box 4000
Scottsbluff, NE 69363
Escrow# RRB-01762206

Dist
Sect
Block 3232
Lot(s) 12.

————————————— Space Above This Line for Recording Data —————————————

## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

WORDS USED OFTEN IN THIS DOCUMENT

(A)    "Agreement." This document, which is dated SEPTEMBER 29TH, 2006, and exhibits and riders attached to this document will be called the "Agreement."

(B)    "Borrower." YOSSEF BONIEL AND SHELLY BONIEL will be called "Borrower" and sometimes "I" or "me." Borrower's address is 172 TENNIS PLACE, FOREST HILLS, NY 11375

(C)    "Lender." LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of UNITED STATES. Lender's address is 230 PARK AVENUE, FLORHAM PARK, NJ 07932

(D)    "Mortgages." The mortgages, deeds of trust or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages"

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS. FOR PURPOSES OF RECORDING THIS AGREEMENT, MERS IS THE MORTGAGEE OF RECORD.

(F)    "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

(G)    "Notes." The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes"

(H)    "Property." The property which is described in the Mortgage(s) and in Exhibit B to this Agreement (Legal Description), will be called the "Property." The Property is located at

72 TENNIS PLACE
[street]
FOREST HILLS, NEW YORK 11375          QUEENS
[city]   [state & zip code]               [county]

I promise and I agree with Lender as follows

I.    BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES
       I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $2,250,000.00. Of this amount, U.S. $721,032.93 was advanced to me (or for my account) immediately prior to this consolidation.

II.    AGREEMENT TO COMBINE NOTES AND MORTGAGES
       (A)    By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation"

       (B)    In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following

              Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages - including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages - have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation"

III.   AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE
Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

IV.   AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE
Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants and provisions of the Mortgages.

V.   NO SET-OFF, DEFENSES
I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

VI.   BORROWER'S INTEREST IN THE PROPERTY
I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

VII.   WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT
This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

VIII.   OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS
If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.
The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

IX.   LIEN LAW
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund," and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

X.   TYPE OF PROPERTY
Check box(es) as applicable

[ ]   This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities

[X]   This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling

[ ]   This Agreement does not cover real property improved as described above

By signing this Agreement, Lender and I agree to all of the above

YOSSEF BONIEL

SHELLY BONIEL

Lender  LEHMAN BROTHERS BANK, FSB

By , MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC

_____ Space Below This Line for Acknowledgments _____

STATE OF New York        )
                         )ss
COUNTY OF NASSAU         )
On 09/29/2006, before me, the undersigned, personally appeared YOSSEF BONIEL AND SHELLY BONIEL, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument

Notary Public

BERNARD J GELARDO
Notary Public, State Of New York
No. 01GE4988161
Qualified in Suffolk County
Commission Expires March 16, 2007

State of                 )
                      ss
County of                )
On              before me, the undersigned, personally appeared , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument

Notary Public

NEW YORK CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3172   1/01
(rev. 1/01)                                                                                                              (page 3 of 3 pages)

## INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac

(1) All notes, security instruments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement   The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate

If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i e , the new money mortgage discussed in (6) below), and (b) the "Gap" Note (i e , new money note discussed in (6) below)

(2) The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement

(3) The Consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e g , Forms 3233, 3501, 3502, 3504, or 3514) with the following language inserted at the top of the document

For Fixed Rate Notes

### CONSOLIDATED NOTE

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

For Adjustable Rate Notes

### CONSOLIDATED ADJUSTABLE RATE NOTE

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

The Consolidated Note, with all blanks completed, and any applicable addendum or addends, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C   The repayment terms of the Consolidated Note (e g , the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note   The dollar amount entered in the first blank in Section I of this Agreement and the consolidated principal amount of the Consolidated Note must be the same

(4) The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033)   The Consolidated Mortgage, with all blanks completed, and any applicable addends (such as an adjustable rate rider), must be attached hereto as Exhibit D   The Consolidated Mortgage need not be signed by the Borrower(s)   The dollar amount entered in the first blank in Section I of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same

(5) For sales of loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed and recorded original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with the original Consolidated Note signed by the Borrower(s) and each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement

(6) If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033)   The dollar amount entered in the second blank in Section I of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same   If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section I of this Agreement should be zero   This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage   It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note

## EXHIBIT A

(1)     The Mortgage given by YOSSEF BONIEL AND SHELLY BONIEL and dated SEPTEMBER 29TH, 2006 in favor of MERS AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB securing the original principal amount of U S $721,032.93  This Mortgage ~~is on a Fannie Mae/Freddie Mac Security Instrument~~ and ~~[was recorded on to the————of————State of a]~~ [will be recorded together with this Agreement ] (Strike if not applicable ) At this date, the unpaid principal balance secured by this Mortgage is U S  $721,032.93  (Strike if not applicable )This mortgage secures a Note dated SEPTEMBER 29TH, 2006

(2)     The Mortgage given by YOSSEF BONIEL AND SHELLY BONIEL and dated JUNE 30TH, 1999 in favor of NORTH FORK BANK securing the original principal amount of U S  $590,000.00   This Mortgage was recorded on AUGUST 5TH, 1999 in the OFFICE OF THE CITY REGISTER, QUEENS COUNTY, STATE OF NEW YORK at REEL 5335 PAGE 1989, This Mortgage secures a Note dated JUNE 30TH, 1999  Mortgage tax in the amount of $13,517.50 was duly paid

(3)     The Mortgage given by YOSSEF BONIEL AND SHELLY BONIEL and dated DECEMBER 31ST, 2002 in favor of NORTH FORK BANK securing the original principal amount of U S  $327,359.33  This Mortgage was recorded on APRIL 28TH, 2003 in the OFFICE OF THE CITY REGISTER, QUEENS COUNTY, STATE OF NEW YORK at CFRN# 2003000107883. This Mortgage secures a Note dated DECEMBER 31ST, 2002.  Mortgage tax in the amount of $6,421.00 was duly paid

(4)     The Mortgage(s) in REEL 5335 PAGE 1989 and CFRN# 2003000107883 were consolidated by CONSOLIDATION EXTENSION AND MODIFICATION AGREEMENT dated DECEMBER 31ST, 2002 and recorded on APRIL 28TH, 2003 in the OFFICE OF THE CITY REGISTER, QUEENS COUNTY, STATE OF NEW YORK at CFRN# 2003000107884, To form a single lien in the amount of $850,000.00  At this date, the unpaid principal balance secured by this Mortgage is U S $684,367.14

(5)     The Mortgage(s) as consolidated were assigned by Assignment of Mortgage dated SEPTEMBER 29TH, 2006 from NORTH FORK BANK TO MERS AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB and intended to be recorded simultaneously herewith

(6)     The Mortgage given by YOSSEF BONIEL AND SHELLY BONIEL and dated JULY 14TH, 2003 in favor of WEBSTER BANK securing the original principal amount of U S  $850,000.00   This Mortgage was recorded on DECEMBER 2ND, 2003 in the OFFICE OF THE CITY REGISTER, QUEENS COUNTY, STATE OF NEW YORK at CFRN# 2003000483578  This Mortgage secures a Note dated JULY 14TH, 2003.  Mortgage tax in the amount of $18,037.50 was duly paid

(7)     Mortgage in CFRN# 2003000483578 was Modified by MODIFICATION AGREEMENT dated JULY 28TH, 2005 and recorded on NOVEMBER 30TH, 2005 in OFFICE OF THE CITY REGISTER, QUEENS COUNTY, STATE OF NEW YORK at CFRN# 2005000662795,  At this date, the unpaid principal balance secured by this Mortgage is U S $844,599.83

(8)     The Mortgage in CFRN# 2005000662795 was assigned by Assignment of Mortgage dated SEPTEMBER 7TH, 2006 from WEBSTER BANK TO MERS AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB and intended to be recorded simultaneously herewith

Mortgage(s) 1 and 2 and 6 are consolidated to form a single lien in the amount of $ 2,250,000.00

## CHICAGO TITLE INSURANCE COMPANY

### RESIDENTIAL REFINANCE CERTIFICATE

### SCHEDULE A DESCRIPTION

# EXHIBIT "B"

Title Number 3606-45160

The land referred to in this Certificate is described as follows

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF QUEENS, CITY AND STATE OF NEW YORK, KNOWN AS LOTS 55, 56 AND PART OF 53 AND 54 IN BLOCK 104, ON A CERTAIN MAP ENTITLED "MAP NO 1 OF FOREST HILLS GARDENS, SITUATED AT FOREST HILLS, BOROUGH OF QUEENS, COUNTY OF NEW YORK, SURVEYED FOR SAGE FOUNDATION HOME COMPANY DATED APRIL 1913 BY C B FANNY, C E AND FILED IN THE OFFICE OF THE CLERK, NOW REGISTRAR, OF THE COUNTY OF QUEENS ON JULY 15, 1913, AS MAP NO 97, WHICH SAID LOTS ARE MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS

BEGINNING AT A POINT ON THE SOUTHEASTERLY SIDE OF TENNIS PLACE 343 50 FEET SOUTHERLY AND SOUTHWESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE EASTERLY SIDE OF TENNIS PLACE WITH THE SOUTHEASTERLY SIDE OF DARTMOUTH STREET MEASURED ALONG SAID EASTERLY AND SOUTHEASTERLY SIDE OF TENNIS PLACE,

RUNNING THENCE IN A STRAIGHT LINE SOUTH 49 DEGREES 00 MINUTES 30 SECONDS EAST 81 81 FEET,

THENCE SOUTH 18 DEGREES 57 MINUTES 30 SECONDS EAST 51 64 FEET,

THENCE WESTERLY ALONG THE SOUTHERLY SIDE OF LOTS 54 AND 55 ON SAID MAP 74 39 FEET,

THENCE SOUTH 78 DEGREES 57 MINUTES 50 SECONDS WEST 26 23 FEET,

THENCE NORTH 28 DEGREES 13 MINUTES 50 SECONDS WEST 97 19 FEET TO THE SOUTHEASTERLY SIDE OF TENNIS PLACE,

THENCE NORTH 49 DEGREES 04 MINUTES 48 SECONDS EAST 8 75 FEET,

THENCE EASTERLY ALONG THE SOUTHERLY AND SOUTHEASTERLY SIDE OF TENNIS PLACE 46 53 FEET TO A POINT,

THENCE NORTH 38 DEGREES 56 MINUTES 33 SECONDS EAST 22 50 FEET TO THE POINT OR PLACE OF BEGINNING

FOR INFORMATION ONLY   BLOCK 3232 LOT 12

# EXHIBIT B

Return To:  AURORA LOAN SERVICES, LLC
            601 5th Ave, PO Box 4000
            Scottsbluff, NE 69363

Prepared By:  KELLIE COCKET                    ESCROW #:
              AURORA LOAN SERVICES
              400 PROFESSIONAL DR, SUITE 100
              GAITHERSBURG, MD 20879

---------------------[Space Above This Line For Recording Data]----------------------

MORTGAGE MIN 100025440003389217

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated        September 28, 2006
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."
              YOSSEF PONTEL AND
              SHELLY PONTEL

whose address is   72 TENNIS PLACE, FOREST HILLS, NEW YORK 11375
                        sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.
(D) "Lender."
              LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
will be called "Lender." Lender is a corporation or association which exists under the laws of
UNITED STATES.                           Lender's address is
     230 PARK AVE, FLORHAM PARK, NJ 07932

Section:           Block:           Lot:           Unit:

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3033 1/01
LOAN #: 0038457769
-6A(NY) (0005)
Page 1 of 17                Initials:
VMP Mortgage Solutions, Inc. (800)521-7291

PUBLIC
RECORD

(E) "Note." The note signed by Borrower and dated **September 29, 2005**   , will be called the "Note." The Note shows that I owe Lender

**TWO MILLION TWO HUNDRED FIFTY THOUSAND & 00/100**

Dollars (U.S. $ **2,250,000.00**   )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by   **November 1, 2035**   .

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower (check box as applicable):

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider   ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider   ☐ Biweekly Payment Rider   ☐ Other(s) [specify]

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**PUBLIC RECORD**

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender those rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at
72 FROSTS PLACE                                                        [Street]
FOREST HILLS                    [City, Town or Village], New York  11375    [Zip Code],
This Property is in            Queens                        County. It has the following legal
description:
All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof.

(E) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property";

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

PUBLIC RECORD

100025440003389217 0039657768-
GL -6A(NY) (0404)                        Page 8 of 17                      Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language".

**COVENANTS**

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment to be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payment to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 required otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due. Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument and

Next, to reduce the principal balance of the Note.

PUBLIC RECORD

200025440003369217  0038457760
-6A(NY) (0405)                                         Page 4 of 17                              Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me, First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charge due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments, or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 is the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items":

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien";

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

PUBLIC RECORD

1000396460003389227   0038487768                                     Form 3033 1/01
-6A(NY) (8800)                          Page 8 of 17

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Items I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a Lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity; or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior

PUBLIC RECORD

3000244000330227  0030457766
·· (··) ····         Page 6 of 17         Form 3033 1/01

to this Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become an additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable, with such interest, upon notice from Lender to the requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

PUBLIC RECORD

1000054640003389217  0050457768
·-41[NY] (cew)                      Page 7 of 17                      Form 3033 1/01

that any repairs or restorations are being made, Lender may hold my Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property. If the rights are applicable to the coverage of the Property, Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**
I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay, for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**
Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

10003544000338217  0039457769
3044A(NV) (0101)                                        Page 4 of 17                                    Form 3033 1/01

PUBLIC
RECORD

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights In The Property.** If: (i) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights (such as laws or regulations) to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay these amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger, in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes

PUBLIC RECORD)

Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.
(a) Borrower's Obligations.
Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.
Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me, or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing

PUBLIC RECORD

100025640003389227  0038447768
(WS-4A(NY).(000)                                    Page 11 of 17                              Form 3033 1/01

any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. Loan Charges. Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and Valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract, or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument (a) words of the masculine gender mean and include corresponding words of the feminine and neuter gender; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of this Note and of this Security Instrument.

18. Agreements about Lender's Rights if the Property is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all, or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission

1000356400003389217 0039457760
&#x2022;&#x2022;-6A(NY) (0811)          Page 12 of 17          Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment In Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment In Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment In Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment In Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment In Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which

PUBLIC RECORD

1000264400023393217  0038457768
CA-8-NA(NY) (0105)                                    Page 12 of 17                                    Form 3033 1/01

will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property; and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store those small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights if Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

PUBLIC
RECORD

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowable allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording that discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property (check box as applicable).

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

PUBLIC RECORD



3000354000033389217  0038467768
(NY)              Page 16 of 17                Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____(Seal)
                                            YOSSEF BONYEL                  -Borrower

                                            _____(Seal)
                                            SHELLY BONYEL                  -Borrower

_____(Seal)     _____(Seal)
                          -Borrower                                       -Borrower

_____(Seal)     _____(Seal)
                          -Borrower                                       -Borrower

_____(Seal)     _____(Seal)
                          -Borrower                                       -Borrower

**PUBLIC RECORD**

STATE OF NEW YORK,        Nassau          County ss:

On the 29 day of September, 2006 before me, the undersigned, a notary public in and for said state, personally appeared

Yossef Boniel + Shelly Boniel

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s), on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

**PUBLIC RECORD**